Hear ye, hear ye, hear ye. The United States Court of Appeals for the Fifth Circuit is now open according to law. God save the United States and this honorable court. Good morning. All right. Today we've had three cases for oral argument. The first case we'll hear is number 20-30508 Gomez v. Galman. Mr. Adams, you're up please. ...who has the honor of representing Mr. Jorge Gomez, United States military veteran who served this country during the Iraq war. Mr. Gomez was honorably discharged in October of 2014 and thereafter returned to civilian life where he would settle into a New Orleans community along with his mother. Mr. Gomez is a proud American of Honduras descent who like many would sometimes wear fatigue print clothing while running errands and even to the In late July of 2018, Mr. Gomez had the great unfortune of running into two New Orleans police officers while wearing fatigue print. Although these officers were off duty, they used the powers and protection of the New Orleans Police Department to order Mr. Gomez to stop, senselessly beat him unconscious, effectuate an arrest, call for backup, and then be allowed to go home while Mr. Gomez was rushed to the hospital. The district court mistakenly found factual determinations that the defendant officers did not act under the color of law and made other improper factual determinations mainly because the defendant officers were not on duty during the assault. However, the facts taken as true and Mr. Gomez's plausibly plead admitted complaint show that the defendant officers acted under the color of law and further show that there was a link between defendant city's policies and the brazen conduct of the defendant officers that caused unconstitutional violations. To be certain that I have enough time to respond to all questions of the court and make argument, I'll now open the floor for questions to the court. Oh well don't worry we'll stop you when we've got questions. It's your run. You keep going. Trust me we're not bashful. Well thank you your honor. To be specific, there was a DOJ report that came out in 2018 and it was much more than just a report. Judge, it was a prediction. This report cited much of the problems with the police department's strategy of simply just hiring just to have numbers. To be specific, the DOJ report as cited in an amended complaint section 46. The DOJ report executive study states that the NOPD officers too frequently use excessive force and conduct a little stop searches and arrests. The DOJ report specifically found and why it's important. Well let me stop you there and I'll ask you. Okay you made your claim about color of law. You're very familiar with Monell and all the cases that go with that. So make your best case as to how you can prevail on the Monell. Judge, without having conducted discovery in this case, we believe that we have plausibly planned enough to reach Monell. Specifically in the DOJ's report, they talk about the recruitment, the practices, the policies of hiring people on the brass just to fill out numbers. And this is the direct link in how we feel that's how we met Monell. These defendant officers were on incidents of violence in their background leading up to this incident with Mr. Gomez. We have no record of them ever being disciplined, ever being pulled off the street, and because of this this brazenness and because of not being held accountable, they were allowed to go on and assault Mr. Gomez the night that they assaulted Mr. Gomez. The date of the consent order was I want to say 2011 or 2012 if I'm not mistaken. Is that not correct? No, Judge. The consent order was 2018. It was actually issued in January of 2018, if I am correct. And the incidents with the defendant officers prior to Mr. Gomez took place after this was issued. The consent order itself was 2018? I want to make sure, Judge, that I am citing correctly. The order that Judge Morgan is handling. I thought that was around 2012 or 2013 if I'm not mistaken. It was certainly before the current mayor's administration began. It was under Mayor Landrieu, if I'm not mistaken, and that was 2016, I believe. And Judge, while you may be correct in that, there was an independent monitor review of that consent decree. Okay, and that's what you're referring to? That's what you're quoting from? I am, Judge, and I apologize for that. Okay, well, let me ask you about the consent order. It disregards the Monell claim. The consent order governs the selection and training of recruits, doesn't it? And again, maybe I'm mistaken because you're more familiar with it than I am, but the original consent order as signed by Judge Morgan at the inception has provisions for training officers. It does, Judge. It does. Well, how does it help your claim that the recruitment of officers, specifically these two individuals, regardless of what they've done right or wrong, if that was done under the auspices of a consent order, how does it help your Monell claim that the city would be liable if they complied with the consent order and these just happened to be two bad apples? Well, that's the thing, Judge. We have no proof that they complied. In fact, in an alternative, the independent review suggests that they were not complying, which is why we feel, before having a chance to conduct discovery, this is why we feel Mr. Gomez simply just wants to have his day in court to be able to support his claim. If the independent review did not just come out to come out. So we think that there is something there that supports this claim and this Monell claim. It is the practices and the policies of the city and not paying attention to who they are hiring that we believe caused the unconstitutional violations to Mr. Gomez. Feel free to come back to the Monell claim. I know you're going to cover that in more detail. I want to ask you about the the individual claim. How can you distinguish the Bustos versus the Martini Club case, which involves the SWAT officers? How do you distinguish that? Isn't that similar to the allegations against these two defendants? Well, Judge, we believe that it's distinguishable because of this. There were no allegations at all that the officers gave the police officers in that case gave direct orders for the victim that they beat to stop. There was no allegations that the officers called for dispatch. And Judge, I want to pause there because this simply wasn't just a call for dispatch. While Mr. Gomez was beat unconscious, turned onto his stomach, hand placed behind his back, defendant officers called 911 and gave them a special code which identified themselves as officers and in response 911 put out a call saying officers in need. Judge, this is clearly distinguishable from Bustos. Well, let me make certain you have pled that in your complaint, amended complaint. Where can I find it in your I have your amended complaint here. Absolutely, Judge. Because I agree with you that those are important facts if they're relying on city policy or NOPD policy and equipment and so on and so forth. If they've used a code, that's what I understood. The district judge's problem with the case was a shortcoming in the pleading. And Judge, I want to point because I think that these were missed. So, I want to point directly. So, I apologize if I'm looking down often. That's all right. Go ahead. So, specifically page 26, well numbers 26-27 of the amended complaint. Defendant officer Sutton called for backup and continuing to make the arrest. They identified themselves as police officers through dispatch and that can be found on 26-27 all the way through 30. And we pled in the amended complaint this fact which we thought was enough to overcome the motion to dismiss. Let me also go back to earlier in your complaints. You repeatedly talk about the officers acting like police officers. Can you flesh out exactly where you're going with that in terms of what we would see at trial? Well, good morning, Judge Holt. Yes, these are the seven things that neither I nor anyone else who is not an officer would be able to do. They ordered Mr. Gomez to stop and remain in the patio area. After their first initial beating, this attack took place inside of a bar. The bartender knew Mr. Gomez and asked him to leave to get away from the situation. Mr. Gomez started to go out where he was ordered to be stopped and stay in the patio area where their first attack took place. Mr. Gomez was able to get up and leave this attack, get into his vehicle and start to drive away. He was disoriented at the time so as he drove down the street it happened to be in the same direction as the defendant officers. Defendant officers stood in front of his truck, ordered him out of his truck where they beat him again which led to the arrest. I'll agree with you, that is a striking fact, that second aspect where he's already been beaten by these individuals and he's in his car and yet he somehow agrees to leave the car from the very people who attacked him. So I agree with you, that's a very striking fact in your favor. I'm just curious what made your client or what is it that made your client think that they were police officers because they weren't wearing uniforms, right? They were not wearing uniforms, your honor, and I'll say, I'll preference my statement by saying this, without us having an opportunity to conduct discovery, we'll never know exactly. I understand that you want to get to discovery but obviously the complaint comes first and I'm just curious what sort of supports this statement that they acted like police officers and therefore Mr. Gomez believed he was not free to leave. They weren't wearing uniforms, did they announce themselves as officers or? They never announced themselves as officers but the commands in which these officers were given came from an authority type of position. Mr. Gomez having served in the military, we believe he listened because he thought that they were the authorities and he reasonably thought this. Right, and I agree with you that the fact that he's a former military and decorated military suggests he's not exactly a timid person. He's able to handle difficult, even violent situations and yet he did not believe he was free to leave. So I agree that's a compelling fact for you. I guess I'm trying to sort of see if we can flesh that out at all or if this is just something that has to be tried one way or the other. What was it that caused him to think that he was not free to leave? Because I believe that it was the tone and tenor of these officers and when they're in training, Judge, they are trained how to do multiple different things, de-escalation, how to stop a suspect and inform them that they're being stopped. This standing in front of the vehicle, telling them to stop and get out of his vehicle had to come from an understanding that these were the authorities and I better comply even though I'm not sure. Okay, so just to be clear then, you're not, there's no allegation that they've announced themselves as officers. It's more just the tone that they struck made your clients assume that they were officers. There are no allegations that these officers identified themselves. However, Judge, for this purpose of where we are now, they don't have to identify themselves as officers. They just have to act as if and conduct and do things under the circumstances that they're supposed to be able to do and none of us would be able to call the police and walk away scot-free. What cases do you have, the statement you just made I think is a key to the way you've played the case. What's your authority and what cases do you have wherein that there's a similar factual circumstance where there's an implication of some authority by law enforcement but not an either a uniform or a marked vehicle or a badge or a sidearm or anything else that would that would clearly identify the person as law enforcement? Well, thank you Judge for that question and we we rely on Smith versus Carew. We believe that that case is is more analogous to the fact pattern here. There, the court noted that the definition of color of law is broad. The court stated that the color of law does not depend upon on or off-duty status. The court recognized that the police officers who act purely for personal reasons may still act under the color of law and in this case in specific this case is distinguished by the district court but it's factually similar to Gomez's case in that there was an off-duty officer acting under the color of law because he arrested the plaintiff  Well, so what was the wording? You've talked about the tone and so forth beyond the the actual beating itself. What words said by the defendants did you plead to sort of undergird your tone and tender sort of implication of authority? Well, just we we just how we view this case judge and we pray the court views it as well as everything has to be considered together because if there was no break from from this incident so from the initial ordering him to stop on the patio and he complied to getting in this vehicle and he would be in order to stop again the and then the call of the the the police 911. We believe that all of these facts must be considered together in a light most favorable to Mr. Gomez as played in the complaint. Did the the bar have a I mean some restaurants have you know a bouncer or off-duty police that served in security capacity in the bar etc etc when he was stopped in the restaurant capacity did he say or think that well you know this is the restaurant I mean this is the off-duty police or something that effect he had violated some kind of rule within the restaurant I mean is anything to that effect played or said you found just nothing to to that point judge in the complaint itself the ordering of the stop we we we hadn't had enough opportunity to find out if the ordering of a stop if the way that they gestured if they were trained this way we we haven't had the opportunity to find out to make that argument so we played what we could in this complaint and and to judge's point of of why he would would stop in the first place I go back to to Mr. Gomez's career in the service which is why I opened up to the court with his background he he was trained as well to follow directions to follow orders and the defending officers were trained on how to give directions and give orders and that night they did that and beating Mr. Gomez unconscious so you mentioned the Smith versus Carruth case but isn't that a case where the officer it's off duty but they actually used displayed the police badge and had handcuffs and brought out the handcuffs and issued Miranda warnings before the criminal activity or before the uh the illegal activity in that in that case it was judged but but also judge it was a to dismiss things I understand I believe I appreciate deeply that this is the posture of this case is favors you as well but you understand the struggle here as we're trying to figure out what distinguishes this from a private criminal action which you know officers off duty might very well commit uh as this case certainly suggests that wouldn't necessarily rise to color of law in a 1983 case what makes it a use of state force case I think you know there's a world in which you get where you win this appeal but then you lose that summary judgment and I'm just like trying to figure out you know what are the facts that are coming in this case that suggest use of force use of state state force judge I'll say this in answering that when you when you the color of law is purely factual and there are different facts in different cases so when you look at Bustos versus Martini Club you can see Mr. Gomez has is able to the officers making the arrest then you have Smith versus Peru which clearly shows officers Mirandizing Mr. Gomez may fall in the middle but that does not mean he doesn't meet his burden all right so if I may ask one quick question yeah sure go ahead Judge Stewart um counsel maybe we can my question relates to something you started out with so maybe we've come full circle but on the Monell claim you mentioned that there were two instances by I believe the defendant Gallman of record where he had been reported and one of them though was and not that these are okay but there was a damage to property and an illegal strip search how do those claims I mean those claims seem very dissimilar to what happened here and I'm not trying to put them on a scale of of how heinous they are but this seems like an event that is much more egregious yeah in terms of the bodily injury you put a photograph in the complaint so how do those two claims support a Monell claim they seem very dissimilar well Judge thank you for that question because we put a lot of thought into that as well before we um you know filed a complaint and on its face it does seem like it may just be incidences of of bad doing but it is the details within the criminal damage to property defendant officer had but a car's mirror because he was mad because the car came too close to him in the strip searching situation it wasn't just simply a strip search your honor that it was it was borderline an invasive cavity search out in the open where defendant officer used his hand and I'll stop there you know to not go into further deep so this officer has shown that his actions only escalated and that goes right back to Monell in the Department of Justice report and also the independent remonitor review which said that it was the training the the protection the the code of blue this officer on probationary period with two incidents should have been taken off of the streets and reprimanded and put to some type of training and we believe this is what led to him to he and the other defendant officer beating Mr. Gomez not because they hoped or they wished but they knew nothing would happen at all to them all right well thank you Mr. Stater you've answered our question but you've reserved some rebuttal time we'll hear now from the city Mr. St. Raymond uh may I please the court this is Corwin St. Raymond I'm on behalf of the city of New Orleans this matter was dismissed by the district court properly Gomez's complaint failed a state of claim against the city of New Orleans and the dismissal was appropriate under rule 12 the suit as you got you all know was filed after a bar fight this bar fight occurred at 2 30 in the morning I think a few salient facts are largely undisputed three people were involved in the fight Mr. Gomez Mr. Sutton and Mr. Gallman at the time of this fight uh Mr. Gallman and Mr. Sutton were both NOPD officers however as you know when you call this a fight are you alleging are you suggesting that Gomez was participating in this or I thought at least as a complaint as we have to take it this was an assault I hate to I hate to go outside of the complaint because we're in a rule 12 motion but uh but there was some conversation or in the previous argument regarding uh how the second fight uh occurred um Mr. Mr. Gomez well Mr. Sutton and Mr. Gallman left the bar uh after the fight was broken up by some bystanders Mr. Gomez got in his vehicle uh and drove past his street uh in the direction of Mr. Gallman and Mr. Sutton so I suspect if discovery was argument that at that point Mr. Gomez became the aggressor uh and he and and my understanding from the from the from the reports in this matter uh there was uh Mr. Gomez went into his vehicle to retrieve something and that's when Mr. Gallman and Mr. Sutton uh engaged him again and beat him uh or got the best of them uh I don't know everything you're arguing counsel seems to suggest that there's a need to do discovery you're going you just said you have to deal with the amended complaint everything you're everything you're telling us right now seems to be the subject of discovery yeah this is your this is your opposition to summary judgment is what you're telling us right you're absolutely right but you you brought up whether or not um judge ho you brought up whether or not Mr. Gomez engaged in the fight I was just giving you a little bit of flavor as to what would come out in the event this did proceed to discovery I believe of course the question you asked went to the question of whether it was a fair characterization of incident number one as a quote fight I mean that's that was the question as you took it as an open door to say a whole lot more than that and you may have stepped in doing so you may have stepped in it because it does sound like all the more reason hey you might win on summary judgment but we had 12 his question was was it fairly characterized as a fight versus you know he was beat by these two people putting aside the second incident that's that's that's where we were but then we ended up in the street so I'm and I apologize um I think that the complaint leaves a few facts out I don't think that there's any facts uh that were pled that get us past a rule 12 motion um I think that the case was appropriately dismissed based upon what pled mr gomez was aware of every single fact of that night he was there uh he knew what mr gallman and mr sutton did he he pled his best case um so I think so let's talk about the complaint then I think we're resetting the conversation to focus on the complaint it's 12 sure so what I see are the following allegations and so I want to I want to get your response as to why this is not enough to get past 12 b6 there's numerous allegations of acting as a police officer there's a direct order to stop uh there's gomez's belief that he was not free to leave even though every human being I would think would want to flee their attacker if they were allowed to leave uh and there's no indication that he's particularly timid he's actually a former military official uh military uh former soldier uh the word arrest has been been used the word police hold is used and then there's the of course the uh fact that after he was unconscious uh there were all these efforts as officers to use their station in order to uh get away with it why is that not enough to get past 12 b6 well um because a number of those statements are extremely conclusory the use of the word stop for instance there is no training there is no there's no plead uh pleading or fact alleged in the complaint that indicates that nopd officers are using the word stop um but when you say conclusory that's a that's an important legal term right i mean yes we don't we don't accept you don't get past 12 b6 by simply saying color of law as required under 1983 you have to allege facts aren't these facts well i'm my statement is is that the the the fact of use of the word stop is a police term that would lead one person to to believe that they were being engaged by a police officer so what are the allegations that are missing because obviously there there must be a situation like this that would get past 12 b6 what would you require what would you have us require a complaint to say that this complaint does not have well i think if they if the officers the off-duty officers identify themselves as police officers he said if when he said stop he said you need to stop i'm an nopd officer i'm going to handle this and i'm going to take care of the dispute between you and and mr sutton or mr gallman whoever it was that made the command of stop i don't think using the word stop rises to the level of a police officer command um these two guys uh one of the individuals took mr gomez's hat from his head and left the bar uh the other uh the other individual sutton intervened i presumably to stop any further escalation of the incident and he asked mr gallman hold on stop uh let me see what i can do here uh when he's talking to mr mr gomez uh gallman comes up and this is in the complaint he punches him in the face punches gomez can you talk to me about the police hold and the effecting of an arrest those are in the complaint as well right okay so the after okay so before we even get there there's the allegation of um of they blocked his way ordered him to stop and get out of the vehicle um first of all again it's again another conclusory statement there is no training that's identified that uh indicates that an nopd officer should step in front of a vehicle in fact i i would suggest that that would be an officer body in front of the vehicle uh as far as the hold is concerned that's after they engage in the fight and fought him on the street and they called the police i guess they thought and i don't know what they thought but i presume that they wanted to call the police because they had just beat this guy up and uh they they stayed for the police to show up now now one thing is certain both of these guys were investigated by the nopd as soon as they arrived they were the district court took judicial notice that they were both terminated within 24 hours of this incident they were both charged with crimes so as far as them there being a blue coat of silence and a cover-up by the nopd that's the facts do not support that and council let me ask maybe this is a a more general way of asking is there any case law that you can cite us to that establishes a minimum pleading standard for under someone acting under color of law there's got to be legions of cases where an officer let's say is in a bar and has handcuffs or a sidearm or some other indicia of authority so as i understand it your argument is he didn't plead sufficiently that these officers disclosed and it doesn't seem like it's said look i'm nopd you need to comply or so on and so forth so is there any case law that can help us define what the minimum threshold is insofar as acting under color of law or is that just sort of a case-by-case uh evaluation that depends on the fact which would then suggest discovery well judge i certainly think that it is a case-by-case evaluation um i don't think that there necessarily has to be discovery there's case law that supports uh a rule 12 motion uh and and the fifth circuit upholding a rule 12 motion when the when a plaintiff fails to plead a color of law that's that seems to beg the question though i mean we wouldn't be here if they said we're nopd yada yada here's my badge dada dada i mean if that had happened we wouldn't even be sitting here because you know it would be axiomatic they said they were the police so i mean that can't be the standard because if that were if that were facts in this case you know i don't think we'd be here anyway because it's there so as judge inglehart asked it can't be the extreme is the only example um there has to be something without and again we're at 12 b and so with pleading i mean there's only so much you can plead from the incident uh to make out the case so you know you rely heavily on a number of cases yes each one of them are different but the reality is they were police officers yes they were they were police officers but they were not acting with the air of authority of a police officer so they were police officers so because they were off duty their manner their tone their talk it just cut off like you cut your phone off so i mean in the heat of a fight their officers i mean like us as judges i mean we're judges 24 7 um and other people so they're they're officers they're in there so no they don't have the uniforms and so forth so it's not a fair allegation that the tone the temperament the words used etc by people who are police officers would be at least enough to get you past what we said well judge you just mentioned judges and i'd point you to a fifth circuit case uh by the name of uh webb versus morella and that was a that was a case that was dismissed on a rule 12 motion uh where an individual went to the the private law office of that judge um they engaged in a fight and uh the the the judge filed a rule 12 motion saying he didn't he didn't act under the color of law he was acting in his personal capacity um as a citizen the the court dismissed it uh as under the color for a failure to state a claim under the color of law and the fifth circuit upheld it um i think that i do was there any allegation in that case that the that the uh plaintiff was not free to leave did not feel free to leave oh no no no no i mean it's totally different so i mean can we deal with that aspect of it sure sure i mean let's be very clear i think this is a very close case on the 12b6 and the reason why it's not devastating one way or the other is i i'm trying to figure out why is it that gomez believed he was not free to leave that is a striking statement from somebody who was a commended soldier well what are we supposed to do with that allegation i would point to to gomez's him being a soldier and this other this this incident started out as pled regarding military service uh the one of the one of the off-duty officers was the idea so your theory is that he's sort of unusually docile is that sort of idea not not docile but like unusually obedient if somebody tells him to stop it doesn't matter how obviously private they are and they're not at all a cop he will just simply listen to that order no matter who it is correct correct and i do think that the bustos case is is instructive i mean that case talks about that it was pled that these officers joined arms as a SWAT as a SWAT team and blocked it blocked the plaintiff's way and acted as police officers uh to beat this guy um that case was dismissed on a rule 12 motion it was upheld by the fifth circuit but there the guy was running away wasn't he he was i mean they used physicality to stop him but but he didn't feel as i understand bustos and you tell me if there's a statement in there that that i'm missing bustos was not a you know you are not free to leave you must stop uh it was just simply we're going to beat you and we're going to block you from leaving but the very reason you block somebody from leaving is because you have no authority otherwise to block them from leaving right i i would agree with that i mean bustos is different from this case from the standpoint of there was a statement of to stop but again i go back to the authority with the word stop this is someone who's engaged in an aggressive bar fight could scream stop that doesn't mean that that you're a police officer uh we've all probably used the word stop before it doesn't mean that you're a cop um and and to to reach the conclusion gomez reached the conclusion that these guys were cops post incident i do not i don't believe the facts show that he reached that conclusion during the incident oh yeah if you're able to again that sort of going back to the summary judgment discussion right there's a pleading that they were acting like police officers you will have the chance if it goes to summary judgment trial you'll have the chance to refute that and to say they weren't acting like police officers at all but the point is that's in the complaint sure well i i only have 35 seconds but i would like to address uh the also although the court dismissed this for a color of law issue the city's position is also that that plaintiff gomez did not plead a manel claim he did not he did not allege a policy practice custom of the of the nopd that that that this incident would it was was promulgated by the nopd or was supported these types of activities well there was duty right but there's nothing in the complaint that that training policy a custom of nopd that gives rise to a a constitutional claim against the city of new orleans uh and so in our motion to dismiss we relied heavily on pursuing the dismissal by way of the manel claim uh the court didn't did not really address the manel claim because uh the judge indicated that he didn't need to get to the manel claim because he found that there was not enough to satisfy that they were acting under the color of law um so i think that this court in a de novo review can can look at our our motion to dismiss uh and determine and look at the complaint to determine whether or not there was a sufficient pleading under manel too so i don't think that this case fails just for not pleading under the color of law i think it fails for failing to plead a claim under manel against the city of new orleans all right thank you mr ramon i think we've got your argument appreciate it thank you all right we'll hear from mr levinson uh good morning judge my name is lenny levinson i represent the defendant spencer sutton in this case i'd like to just call the court's attention to two things that the district court judge said in connection with granting the motion to dismiss he said and i'm summarizing there are no allegations of specific actions by would lead to the conclusion either was acting as a police officer he went on to say that gomez's allegations indicate that gomez excuse me that garman and sutton took no steps that would reveal they were acting as police officers as opposed to private citizens or off-duty officers in their personal capacities and i want to remind you that in the plaintiff's counsel he responded today that there are no allegations in the amended complaint that these two identified themselves as police officers i don't think that if someone tells you to stop that you can assume that they're a police officer if someone tells me to stop and he's bigger than me and he's already beat me up and he has the ability to beat me up again i'm gonna stop but that doesn't mean he's a police officer it's me not so what what of the allegations that uh plaintiff's counsel highlighted from the amended complaint such as in paragraph 26 that uh mr sutton called for backup i mean nobody calls for backup usually except for someone in law enforcement paragraph 27 that they called they identified themselves to nopd dispatch as officers that they sent a signal or used a code for potential responding officers that it was an emergency that the officer was in need of assistance and that the nopd investigated the incident in addition to the fact that they asserted some authority preventing him from leaving but let's put that aside what about the call for backup in the identification to dispatch as officers well judge i'm going back to it the district court said and noted again remember i'm talking about the amended complaint before we get to what the district court said but the amended complaint is what we're is what the district court considered to rule well i understand that judge but when they call for backup uh and identify themselves in police offices the beating is over they're calling police to come to the scene mr gomez is unconscious he doesn't know that they just told used a secret number or a code or something to call the police out he was on cut they say in a complaint he was unconscious and that was noted by the district judge that it's over at that point and there's nothing there's nothing in the complaint that says when they tell him to stop or whoever told him to stop on the patio that they did that as a police officer as opposed to a bully okay but but let's go back to the to the second incident uh what person in a he was in a car at the time right yes sir so what person would stop and allow themselves to be beaten again uh by someone who they didn't think were cops i think a person who's driving a truck or a car and somebody stands in front of him and blocks his ability to leave you know i don't know that i'd run over somebody and take that chance well i mean you might not get you you might stop you might not run the person over because you don't want to hurt somebody even your assailant but didn't he go he was ordered he was ordered to to exit the vehicle and he exited the vehicle i might not have run the person over but i'm sure he's not going to exit the vehicle well i'm going to wait for you to come across to the side and then i'm going to leave i'm going to drive away again if we're looking at just the complaint and i had a note on as to what paragraph it was but it's 23 and 24 all right when they said they ordered him out of the truck they don't say he did it as a police officer they just said they ordered him out of the truck oh come on the previous paragraph says acting like a police officer i think you're being a bit persnickety there well well but i don't know what acting like a police officer means i mean i know what he intend by it but in other words i think you could order me out of my car and not be a police officer whether or not i comply is a different story no no i i totally agree these these allegations may or may not hold up the point is is this enough to at least get to a fact proceed well of course we hope they're not no i understand i understand your position all right you get my point is at the end of the day i just i i get that this is not the strongest pled case on color of law believe me i i i get that point the question to my mind and the and the only really to be deciding question is is it enough that he's already been beaten by these people he's in his truck so he's protected by the steel and then the other protections of being in a vehicle um and yet he feels like he has to comply that suggests at a minimum a subjective understanding that they were police officers or a subjective understanding that they were going to beat him regardless and i look i i understand the point judge but i also think that this could very simply be cured if there had been an allegation that at any time they showed a badge a gun said i'm a police officer anything well i'll still say if we had those facts we wouldn't be here i mean i think you push you're pushing the point you know i mean if they showed the badge and said all that you wouldn't need to argue that we wouldn't even be here i mean we're we're a step back so i mean to argue the extreme and say well you know if they showed his badge and they said they were police well this case we wouldn't be here we're obviously at a point beyond it you still haven't for me addressed you know really the point i mean when they call the police off and use the code and all that well heck they still step back into the role that they they were you you want to just distance yourself from what they did do that's a less than a complaint we're on a 12 b6 but at any event you've exhausted your time uh so we're going to go back to mr adams on on rebuttal thank you judge judge i want to i want to up on on judge ho's last point and i want to say this the only reason that mr gomez may not have been able to say that they were identified as officers was because he was beat unconscious no citizen would have been able to walk away from that incident having being the aggressor these officers it was mentioned by council that these officers were arrested and they were cited by the court judge i want the court to know that these officers never spent any time in jail received the lightest of the lightest and this directly goes when i return back to the monel arguments how do we know through discovery that we won't won't find that there are some trainings on what do you do when you're ordering a stop how loud do you get do you press with your hand do you order a person out how do we know through discovery that we won't find that defendant officer with the two prior incidents had a had a record that should have flagged him from being hired in the first place these officers were on probationary periods that gets us to monel as well as the color of law if this case is distinguishable from bustos and that there was an arrest made now where it might not meet as high as caruth it most certainly touches the points to survive a 12 b and with that i'll rest your honor all right we appreciate your argument and to mr st raymond mr levinson we appreciate your briefing and argument uh in in this case it's helpful to the panel uh that concludes the arguments in this case and the case will be submitted thank you gentlemen you're excused thank you